UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ABIODUN FABODE,

    Defendant.

_____/

Case No. 18-20351

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL [205]**

This matter comes before the Court on Defendant Abiodun Fabode's motion for a judgment of acquittal and/or new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. (ECF No. 205.) The government opposes the motion. (ECF No. 206.) The Court finds the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs. For the reasons stated below, the Court DENIES Defendant's motion.

**I.    Background**

In August of 2019, Defendant Abiodun Fabode, a licensed pharmacist, was charged in a seven-count superseding indictment with conspiracy to illegally distribute prescription drug controlled substances (Count One) and six counts of unlawful distribution of prescription drug controlled substances (Counts Two through Seven). On November 13, 2019, after a twelve-day jury trial, Defendant was convicted on Counts One, Two, Three, Four, and Seven. Defendant now moves for acquittal on

1

these Counts and/or a new trial. As the basis for his motion, Defendant argues insufficient evidence was presented at trial to convict him of each of the elements of all counts on which he was found guilty.

## II. Rule 29 Motion for Acquittal

### A. Standard of Review

Federal Rule of Criminal Procedure 29 allows the Court to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). "In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). The court does not independently weigh the evidence or assess the credibility of trial witnesses. *Id.* It must, however, "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Fusero*, 106 F. Supp. 2d 921, 927 (E.D. Mich. 2000) (quoting *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982)).

### B. Analysis

The jury found Defendant guilty on Counts One, Two, Three, Four, And Seven of the superseding indictment. Defendant argues there was insufficient evidence to convict him on each of the elements of these charges.

2

### 1.   Count One – Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances

As the Court instructed the jury, the government was required to prove the following essential elements beyond a reasonable doubt in order to convict Defendant on Count One: (1) that two or more persons conspired or agreed to commit the crime of possession with intent to distribute and distribution of controlled substances; and (2) that Defendant knowingly and voluntarily joined the conspiracy. (ECF No. 199, p. 14.) Because Defendant was a licensed pharmacist at the time he committed the acts leading to his indictment, the jury was also informed of the relevant law applicable to pharmacists. Notably, the jury was instructed that a pharmacist may not be convicted when he merely dispenses controlled substances in good faith to patients in the regular course of professional practice. (ECF No. 150, p. 26.)

In proving a conspiracy "proof of a formal agreement is not necessary; a tacit or material understanding among the parties will suffice." *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997). Moreover, the existence of a conspiracy "may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* at 971 (citation omitted). Once the existence of a conspiracy is shown beyond a reasonable doubt, a defendant's connection to the conspiracy "need only be slight." Id. Although mere presence at the crime scene is insufficient to show participation, a defendant's participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances. *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998).

Defendant argues there was insufficient evidence that he was part of a criminal conspiracy or that he dispensed the controlled substances in anything other than good

3

faith. In support of this contention, Defendant points to select portions of his codefendant Vasan Deshikachar's testimony and simultaneously ignores the bulk of the evidence admitted at trial. For example, during the course of the trial, there was testimony concerning van loads of people entering Defendant's pharmacy lobby to be seen by the doctor for only a few minutes at a time. The evidence showed that co-conspirator Niesheia Tibu ("Tibu") would then present identical prescriptions for highly abused opioid pills to Defendant who later filled them and delivered them to Tibu rather than the purported patients. As the Government notes, this set up was so "obviously illegal" that one witness testified she would not go back to Defendant's pharmacy for fear of getting in trouble.

Indeed, the testimony of multiple witnesses and numerous exhibits admitted at trial established that Defendant was aware of and intended to participate in a conspiracy to sell opioids. Defendant knew co-conspirator Tibu was a pill dealer and that the prescriptions he filled for her were not legitimate. Wiretap calls and text message exchanges admitted into evidence showed the relationship between Defendant and Tibu to be about deals for prescription drugs. Through the calls and text messages, Defendant and Tibu discussed how many opioid prescriptions Defendant could fill on a given day and how much money Defendant would charge Tibu to fill the illegitimate prescriptions. Tibu testified that Defendant charged her $800-$1000 per prescription depending on the drug and how he felt that day. She also testified that Defendant told her he knew how much she could sell the pills for on the street and that is why he insisted she could pay the prices he was charging her per prescription. (ECF No. 191, p. 83-84.)

4

Evidence also established that Defendant introduced Tibu and other patient recruiters to Dr. Deshikachar in furtherance of the conspiracy. (ECF No. 189, p. 90-92.) Dr. Deshikachar testified that every person Defendant referred to him turned out to be a pill dealer that brought in patients for illegitimate prescriptions. (ECF No. 191, p. 108-09.) One of these individuals was "Jamea," whom Defendant introduced as a hairdresser that worked nearby. Upon meeting Dr. Deshikachar, Jamea immediately started bringing fake patients and cash seeking prescriptions for opioids that were later dispensed by Defendant. (*Id.* at 109-10.)

Finally, as the Government notes, there were multiple "red flags" that would have alerted Defendant as to the existence of and illegality of the scheme, especially considering his decades of experience as a pharmacist and his education. (See ECF No. 206, p. 9-11.) There was testimony from multiple witnesses concerning the "pattern prescribing" with which Defendant was presented in filling these prescriptions. Patients would present with the same prescription for the same drug in the same strength and quantity from the same doctor day after day. Multiple witnesses testified that the purported patients and Tibu would travel 30 minutes or more past numerous pharmacies to fill the prescriptions at Defendant's pharmacy. Evidence provided at trial showed that the prescriptions were presented to Defendant by Tibu and the purported patients rarely, if ever, interacted with Defendant. Additionally, the evidence established that virtually all of the prescriptions were paid for in cash and the amount charged by Defendant was grossly excessive. Finally, there was evidence that Defendant would wait weeks or even months at a time to dispense the pills.

5

The Government also presented evidence that Defendant's actions were not done in good faith. "Good faith" was defined for the jury as "good intentions and the honest exercise of good professional judgment as to a patient's medical needs . . . an observance of conduct in accordance with what the pharmacist should reasonably believe to be proper pharmacy practice." (ECF No. 150, p. 27.) Dr. Carmen Catizone, the Executive Director of the National Association of the Boards of Pharmacy, testified regarding a pharmacist's responsibility and the steps a pharmacist should take to ensure prescriptions are from legitimate providers for legitimate patients. He testified that he reviewed the records involved in Defendant's dispensing of opioids and opined that Defendant's dispensing of the drugs was outside the course of professional pharmacy practice.

Thus, the evidence was more than sufficient for the jury to find Defendant guilty of Count One.

### 2. Counts Two, Three, Four, and Seven – Unlawful Distribution of Controlled Substances

Counts Two, Three, Four, and Seven involved specific instances of Defendant filling illegitimate prescriptions presented by Tibu. The jury was instructed it could find Defendant guilty of these charges if the Government proved beyond a reasonable doubt that (1) Defendant distributed (or assisted another in the distribution of) a controlled substance; (2) the prescription being filled was issued outside the course of professional practice and for no legitimate medical purpose; and (3) Defendant acted knowingly and intentionally, and not in good faith. (ECF No. 150, p. 24.)

Any rational trier of fact could find the elements of these crimes beyond a reasonable doubt considering the magnitude of evidence presented at Defendant's

6

trial. *See Driver*, 535 F.3d 424, 428-29 (6th Cir. 2008). The individuals presented as "patients" on each of the prescriptions underlying these Counts testified at trial involving their part in the scheme, their minimal or no interaction with a doctor, their minimal or no interaction with Defendant and the fact that they simply took cash from Tibu and allowed her to collect the pills from Defendant. Further, Tibu testified about the circumstances underlying each patient and each Count and Dr. Catizone testified that Defendant was operating outside the course of professional practice. Accordingly, the facts and circumstances presented at trial provided more than sufficient evidence for the jury to convict Defendant of these Counts.

### III. Rule 33 Motion for a New Trial

#### A. Standard of Review

Federal Rule of Criminal Procedure 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (citing *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). It is, however, "widely agreed that Rule 33's interest of justice standard allows the grant of a new trial where substantial legal error has occurred." *Id.* This includes "reversible error or violation of the defendant's substantial rights." *Id.* at 374. And when "deciding Rule 33 motions based on the manifest weight of the evidence, . . . a district judge 'may sit as a thirteenth juror and consider the evidence to ensure that there is no miscarriage of justice.' " *Id.* at 373 n. 9 (quoting *United States v. Legette-Bey*, 147 F. App'x 474, 486 (6th Cir. 2005). "Generally, such motions are granted only 'in the

extraordinary circumstance where the evidence preponderates heavily against the verdict.' " *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009) (citing *Hughes*, 505 F.3d at 592-93 (6th Cir. 2007)).

The decision to grant a Rule 33 motion for a new trial lies within the Court's sound discretion. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). "The defendant bears the burden of proving that a new trial should be granted." *Id.*

**B.     Analysis**

As the Government notes, Defendant's motion is titled to include a motion for a new trial, but Defendant only makes a brief reference to Rule 33 and provides no analysis under this Rule. Rather, Defendant focuses the entirety of his arguments on sufficiency of the evidence, the Rule 29 standard. Accordingly, Defendant's request for a new trial is denied for the same reasons discussed above. *See United States v. Bowens*, 983 F.3d 790 (6th Cir. 2019) (holding that the district court's denial of the defendants' Rule 33 motions "for the same reasons" it denied the defendants' Rule 29 motions was "enough under abuse-of-discretion review because the defendants made the same arguments in support of their Rule 33 motions as they did in support of their Rule 29 motions.") Defendant's evidentiary arguments are insufficient and the manifest weight of the evidence does not cut against the jury's verdict.

**IV.    Conclusion**

For the foregoing reasons, Defendant Abiodun Fabode's motion for a judgment of acquittal and/or new trial is **DENIED**.

SO ORDERED.

Dated: April 21, 2021

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

8

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 21, 2021, by electronic and/or ordinary mail.

           <u>s/Lisa Bartlett</u>
           Case Manager