UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

   Plaintiff / Respondent,

          Case No. 18-cr-20351

v.

          Hon. Nancy G. Edmunds

D-3 Abiodun Fabode, R.Ph.,

   Defendant / Petitioner.

_____/

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF NO. 304)

For the reasons stated in the attached brief in support, the United States respectfully requests that the Court deny Defendant Abiodun Olufemi Fabode's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in a Federal Custody" (ECF No. 304).

Respectfully Submitted,

Dawn N. Ison
United States Attorney

/s/ *Nhan Ho*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48236
313-226-9632
Nhan.ho@usdoj.gov

Dated:  August 30, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

        Plaintiff / Respondent,

                                    Case No. 18-cr-20351

v.

                                    Hon. Nancy G. Edmunds

D-3 Abiodun Fabode, R.Ph.,

        Defendant / Petitioner.

_____/

**BRIEF IN SUPPORT OF
THE UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE (ECF NO. 304)**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..........................................................................ii

ISSUE PRESENTED ................................................................................v

MOST CONTROLLING AUTHORITIES..................................................vi

INTRODUCTION ....................................................................................1

BACKGROUND........................................................................................1

STANDARD ............................................................................................3

ARGUMENT ...........................................................................................6

    I.    FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE
        DURING PLEA NEGOTIATION FAIL. ...................................6

    II.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE
        DURING TRIAL PREPARATION FAIL..............................11

    III.  FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE
        AT TRIAL FAIL. ...................................................................14

    IV.  FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE
        AT SENTENCING FAIL. ......................................................17

    V.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE
        ON APPEAL FAIL. ...............................................................20

    VI.  AN EVIDENTIARY HEARING IS NOT WARRANTED. ....24

CONCLUSION ........................................................................................25

i

# INDEX OF AUTHORITIES

## Cases

*Arredondo v. United States*, 178 F.3d 778 (6th Cir. 1999)........................6

*Brenay v. Schartow*, 709 F. App'x 331 (6th Cir. 2017) ............................17

*Clark v. Warden*, 934 F.3d 483 (6th Cir. 2019) ........................................24

*Cullen v. Pinholster*, 563 U.S. 170 (2011)..................................................8

*Harrington v. Richter*, 562 U.S. 86 (2011)..................................................5

*Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006) .................................5, 16

*Huff v. United States*, 734 F.3d 600 (6th Cir. 2013)...........................24, 25

*Hunter v. United States,* 160 F.3d 1109 (6th Cir. 1998) .........................10

*Hutchison v. Bell*, 303 F.3d 720 (6th Cir. 2002) .....................................12

*Kirby v. Illinois,* 406 U.S. 682 (1972)) .....................................................18

*Lafler v. Cooper*, 566 U.S. 156 (2012)...................................................8, 10

*Lee v. United States*, 582 U.S. 357 (2017) ..................................................9

*Mathis v. United States*, No. 13-20262, 2015 WL 5439246
  (E.D. Mich. Sept. 15, 2015) ..................................................................10

*McPhearson v. United States*, 675 F.3d 553 (6th Cir. 2012)..................13

*Michel v. Louisiana*, 350 U.S. 91 (1955)....................................................5

*Missouri v. Frye*, 566 U.S. 134 (2012).......................................................11

*Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002).....................................23

*Neill v. United States*, 937 F.3d 671 (6th Cir. 2019)..................................9

*Perrou v. Jones*, No. 06-14941, 2009 WL 2392871 (E.D. Mich. Aug. 3, 2009) ....................................................................... 22

*Rogers v. Haas*, No. 211-CV-15485, 2013 WL 3188849 (E.D. Mich. Apr. 8, 2013), *supplemented* 2013 WL 3188852 (E.D. Mich. May 24, 2013) ....................................................... 22

*Ruan v. United States,* 142 S. Ct. 2370 (2022) ........................................ 22

*Sanders v. Ford*, No. 3:16-CV-02763, 2017 WL 3888492 (M.D. Tenn. Sept. 6, 2017) .................................................... 11

*Searle v. Rapelje,* No. 2:09-CV-13369, 2011 WL 3918951 (E.D. Mich. Sept. 7, 2011) ........................................................... 18

*Segura-Corro v. United States*, No. 22-6127, 2023 WL 3273103 (6th Cir. May 3, 2023) ........................................... 24

*Short v. United States*, 471 F.3d 686 (6th Cir. 2006) ............................. 10

*Smith v. Cook*, 956 F.3d 377 (6th Cir. 2020) ....................................... 8, 9

*Smith v. Murray*, 477 U.S. 527 (1986) .................................................. 23

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................... *passim*

*Toledo-Yin v. United States,* 26 Fed. Appx. 406 (6th Cir. 2001) ............... 6

*Ucciferri v. United States*, 2006 WL 1281362 (M.D. Fla. May 9, 2006) ...................................................................... 22

*United States v. Boston,* No. 14-20383-1, 2021 WL 2646132 (E.D. Mich. June 28, 2021) .................................................... 24

*United States v. Cook,* No. 10-20716, 2014 WL 4704843 (E.D. Mich. Sept. 21, 2014) ...................................................... 9

*United States v. Fabode*, No. 21-1491, 2022 WL 16825408 (6th Cir. Nov. 8, 2022) ................................................. *passim*

*United States v. Hilliard*, 11 F.3d 618 (6th Cir. 1993)............................23

*United States v. Khan*, No. 11-CR-20540, 2016 WL 6650334
   (E.D. Mich. Nov. 10, 2016) ........................................................................9

*United States v. Price*, No. 16-20437, 2020 WL 6286302 (E.D.
   Mich. Oct. 27, 2020)................................................................................12

*United States v. Tisdale,* 952 F.2d 934 (6th Cir.1992) ............................17

*Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007)..................24, 25

*Weatherford v. Bursey*, 429 U.S. 545 (1977) ...........................................9

*Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989).........................................18

*West v. United States,* 631 F.3d 563 (1st Cir. 2011)................................21

## Constitutional Provisions

U.S. Const. amend VI ................................................................................3

## Statutes

21 U.S.C. § 841(a)(1) .................................................................................1

21 U.S.C. § 846...........................................................................................1

28 U.S.C. § 2255......................................................................................1, 3

## Rules

Fed. R. Crim. P. 5(a)(1)...........................................................................13

## ISSUE PRESENTED

Has Defendant Abiodun Fabode shown a valid claim of ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution?

The Government answers: NO

## MOST CONTROLLING AUTHORITIES

*Strickland v. Washington*, 466 U.S. 668 (1984)

*Harrington v. Richter*, 562 U.S. 86 (2011)

*Lafler v. Cooper*, 566 U.S. 156 (2012)

*Smith v. Cook*, 956 F.3d 377 (6th Cir. 2020)

# INTRODUCTION

As a pharmacist, Defendant Abiodun Fabode abandoned his professional responsibilities and turned a blind eye to the large quantity of opioids he dispensed flooding the streets. After a two-week trial, a jury convicted Fabode of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1),846, and several counts of Unlawful Distribution of Controlled Substances, 21 U.S.C. §§ 841(a)(1). The Sixth Circuit Court of Appeals affirmed Fabode's convictions and sentence. He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming ineffective assistance of retained counsel. (ECF No. 304.)

Fabode has failed to meet his burden of showing entitlement to reliefs, and his motion should be denied.

# BACKGROUND

The Sixth Circuit summarized the background of this case as follows:

> Abiodun Olufemi Fabode was a licensed pharmacist and the co-owner of Friendz Pharmacy in Detroit, Michigan. In 2016, agents with the United States Drug Enforcement Administration noticed a series of "red flags" at Friendz Pharmacy. Those red flags included pattern prescribing (where the same doctor repeatedly prescribes the same type

1

of opioid, the same strength opioid, and the same number of tablets to multiple patients); slotting (where doctors and pharmacists strategically space out prescriptions to avoid suspicion); remarkably high opioid prices; and an unusual number of patients paying for drugs with cash. These were all signs of a deep-seated and complicated drug-diversion conspiracy.

Here is how the scheme worked. A series of so-called "patient recruiters" found and paid sham patients to fraudulently seek out opioid prescriptions; some recruiters had as many as 80 sham patients at a time. Those patients then obtained opioid prescriptions from complicit doctors, *i.e.*, doctors who were paid to write prescriptions for patients even though the patients had no identifiable medical need. Patient recruiters then met the patients, paid the patients for their prescriptions, and took those prescriptions to a complicit pharmacy, *e.g.*, Friendz Pharmacy. There, a complicit pharmacist filled the prescriptions, charged a premium—as much as a 400% markup on every prescription—and then handed the drugs directly to the patient recruiters. The patient recruiters then resold the drugs at an even higher price to street-level drug dealers. Everyone profited: the patient recruiters resold the opioids for street value, the patients earned about $100 for every prescription they procured, the doctors earned a substantial fee for every prescription they wrote, and the pharmacists earned a hefty profit on every prescription they sold.

Fabode's pharmacy sold a large quantity of exorbitantly priced opioids, Fabode personally filled many of the illicit prescriptions, and he often bypassed the sham patients and ensured that opioids were handed directly to the patient recruiters.

In 2018, federal prosecutors charged Fabode and five of his coconspirators with a series of federal drug-distribution charges. Every defendant except for Fabode pleaded guilty and cooperated with the government. Fabode proceeded to

trial, and several of his codefendants testified against him. Their testimony linked Fabode to every facet of the conspiracy: the planning, the patient recruitment, the drug sales, and the attempted coverup. Fabode was convicted for violating 21 U.S.C. §§ 841(a)(1) & 846, which together prohibit any person without statutory authorization from knowingly or intentionally conspiring "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." The district court sentenced him to 96 months of imprisonment followed by three years of supervised release.

*United States v. Fabode*, No. 21-1491, 2022 WL 16825408, at *1 (6th Cir. Nov. 8, 2022).

After his convictions and sentence were affirmed, *id.*, Fabode filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (ECF No. 304.) Fabode claims that he received ineffective assistance from his retained counsel, Richard Shulman, during various stages of the litigation. (*Id.*)

## STANDARD

To obtain relief under §2555, Fabode must show that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Here, the constitutional defect claimed is a violation of the Sixth Amendment's guarantee of effective assistance of counsel. U.S. Const. amend VI.

3

To establish an ineffective assistance claim, Fabode must prove two separate components. First, he must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, Fabode must show actual prejudice. *Id.*

With respect to the first prong, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulty inherent in making the evaluation," the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The burden rests on the defendant to overcome the presumption that the challenged conduct

4

"might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The standard is "a most deferential one" that must be applied "with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). It is a "high bar," and surmounting it "is never an easy task." *Harrington*, 562 U.S. at 105 (internal quotation marks and citation omitted).

As to the second prong, Fabode "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). "In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Higgins v. Renico*, 470 F.3d 624, 634 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 693).

## ARGUMENT

### I.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE DURING PLEA NEGOTIATION FAIL.

Fabode fails to show that Shulman was ineffective during plea negotiation. Fabode has presented no credible evidence that Shulman failed to inform him of the Government's plea offer, other than his own self-serving statements, which fall short to support a claim of ineffective assistance of counsel. *Toledo-Yin v. United States,* 26 Fed. Appx. 406, 408 (6th Cir. 2001) (denying the petitioner's request for a certificate of appealability when he "presented no credible evidence that counsel failed to inform him of a plea offer and instead merely relie[d] on his own self-serving statements"). Rather, Shulman attested that he discussed plea offers with Fabode numerous times, and Fabode was not amenable to resolving the case short of trial. (Shulman's Affidavit, Ex. 1, ¶ 3.)

Fabode's assertion that he was ignorant of the facts and the laws of his case, and of his plea options and potential sentencing exposure, (*see* ECF No. 304, PageID.3364–66, 3372) are "contradicted by the record [and] inherently incredible." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). As indicated by Shulman, the Government held a 'reverse proffer' with Fabode on May

6

8, 2019. (Ex. 1, ¶ 4.) Then, the Government explained to Fabode the charges and the evidence against him. (*Id.*) The Government also presented Fabode with different sentencing guidelines if he took the plea offer, pled guilty to the indictment, and was convicted at trial:

At the October 22, 2019 hearing, Fabode was again advised of the terms of the Government's plea offer. (ECF No. 285, PageID.3144–46.) Therein, the Government contrasted the sentencing guidelines if Fabode pled guilty to the plea offer and if he was convicted at trial (*Id.*):

|  | Rule 11 Agreement | Convicted at Trial |
|---|---|---|
| Limited drug quantity | Yes | No |
| Reduced offense level for responsibility acceptance | Yes | No |
| Safety-valve application | Possible | Not possible |
| **Guideline** | **70–87 months (with safety valve)** | **235–292 months** |

In Fabode's presence, his counsel reaffirmed his opposition to the

Government's plea offer:

> The Court: No interest?
> Mr. Shulman: My client's not interested.

(*Id.*, PageID.3146.)[1]

Ultimately, Fabode cannot show prejudice. Fabode "has the burden

of demonstrating 'a reasonable probability he and the trial court would

have accepted the guilty plea' if he had been properly advised." *Smith v.*

*Cook*, 956 F.3d 377, 395 (6th Cir. 2020) (citing *Lafler v. Cooper*, 566 U.S.

156, 174 (2012)).[2] Consequently, "absent evidence that [the defendant]

would have taken the deal at the time, [a defendant] has not shown

prejudice." *Id.* (emphasis in original, citation omitted). Here, Fabode

offers nothing to support any rational belief that he was willing to enter a

guilty plea before trial, and "[c]ourts should not upset a plea [or verdict]

solely because of *post hoc* assertions from a defendant about how he

would have pleaded but for his attorney's deficiencies." *Smith*, 956 F.3d

---

[1]    At the beginning of the October 22, 2019 hearing, Fabode's counsel had stated, "My client is not going to take the Rule 11 plea, definitively." (*Id.,* PageID.3144.)

[2]    A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

at 395 (citing *Lee v. United States*, 582 U.S. 357, 369 (2017)) (alterations in original). Instead, the Court "must 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" *Neill v. United States*, 937 F.3d 671, 679 (6th Cir. 2019). In this instance, Fabode's persisting disinterest in the Government's plea offers was unequivocal of his "expressed preference" to not pleading guilty.

Similarly, Fabode cannot demonstrate counsel deficiency by merely asserting that his attorney should have negotiated a more favorable plea agreement. (ECF No. 304, PageID.3362.) A criminal defendant has "no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), let alone a constitutional right to a 'more favorable' plea bargain. *See United States v. Cook,* No. 10-20716, 2014 WL 4704843, at *4 (E.D. Mich. Sept. 21, 2014) (Cook, J.) ("As there is no substantive right to pursue and enter into plea negotiations with the Government, counsel could not have been ineffective for failing to pursue a plea deal.")

Further, Fabode's "claim is based purely on the speculation that a better plea offer could be had, and 'ineffective assistance claims do not turn on such speculative considerations.'" *United States v. Khan*, No.

9

11-CR-20540, 2016 WL 6650334, at *4 (E.D. Mich. Nov. 10, 2016)

(Rosen, J.) (citing *Short v. United States*, 471 F.3d 686, 697 (6th Cir.

2006)); *see Mathis v. United States*, No. 13-20262, 2015 WL 5439246, at

*5 (E.D. Mich. Sept. 15, 2015) (Edmund, J.) (rejecting petitioner's claim

of prejudice from counsel's performance when petitioner "simply

want[ed] a new deal and there [was] no basis to conclude that the

Government would have agree to the scenario Petitioner promote[d] ...")

In short, "while [Fabode] may later have decided that he could have

done better, his dissatisfaction does not rise to a showing of

constitutionally ineffective counsel." *See Hunter v. United States,* 160

F.3d 1109, 1115 (6th Cir. 1998)).

Fabode also posits that he "would have opted to plead guilty

without a Plea Agreement . . . and receive a significantly less harsh

sentence." (ECF No. 304, PageID.3365.) But, contrary to Fabode's

assertion, his actual sentence of 96 months is well below his guidelines

had he pled guilty to the indictment (151–188 months). Consequently,

Fabode was not prejudiced. *See Lafler*, 566 U.S. at 164 (holding that to

show prejudice, "a defendant must show that but for the ineffective

advice of counsel there is a reasonable probability . . . that the conviction

or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."); *Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.")

In short, Fabode's claims of ineffective assistance during plea negotiation lack merit.

## II.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE DURING TRIAL PREPARATION FAIL.

Besides self-serving assertions, Fabode has offered no evidence that Shulman failed to inform him of the defense strategy. (ECF No. 304, PageID.3362, 3367). Conversely, Shulman attested that Fabode actively engaged in the preparation of his defense at trial. (Ex. 1, ¶ 6.) To the extent Fabode was dissatisfied with the amount of time Shulman spent discussing the case with him, "[c]riminal defendants do not have a right to any set number of conversation with counsel." *Sanders v. Ford*, No. 3:16-CV-02763, 2017 WL 3888492, at *14 (M.D. Tenn. Sept. 6, 2017). Moreover, Fabode also "has not identified any material information that was not communicated to or from his trial attorney, or

11

demonstrated how any such communication failure prejudiced his defense at trial." *Id.*; *United States v. Price*, No. 16-20437, 2020 WL 6286302, at *3 (E.D. Mich. Oct. 27, 2020) (Cleland, J.) (rejecting the ineffective assistance claim based on attorney's purported failure to disclose defense strategy for similar reasons). Shulman attest to the fact that the two had multiple discussion over the course of the representation about all stages of the litigation. (Ex. 1, ¶¶ 3, 4, 6, 9).

Equally deficient is Fabode's cursory suggestion that Shulman failed to conduct independent investigation. (ECF No. 304, PageID.3373.) Fabode has neither pointed out what material evidence Shulman should have uncovered nor explained how counsel's failure to uncover it was ineffective and prejudicial. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.")

Fabode next claims that Shulman was ineffective for not taking pretrial deposition of Olugbade Bolanle, Fabode's former business partner. (ECF No. 304, PageID.3371.) However, there is no automatic

right to depose a witness in a criminal case. Under Federal Rule of

Criminal Procedure 15(a)(1), "[a] party may move that a prospective

witness be deposed in order to preserve testimony for trial. The court

may grant the motion because of exceptional circumstances." Fed. R.

Crim. P. 15(a)(1). Fabode has not provided any justification that would

warrant a pretrial deposition of Bolande pursuant to Rule 15(a)(1).

Nor could Fabode show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have

been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th

Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). In this instance,

nothing suggests that, had Bolane been deposed, the Government and

the Court would not take the same measures to safeguard his

constitutional rights,[3] and Bolane would waive his privilege against

self-incrimination.

---

[3]    As observed by the Sixth Circuit, "the prosecution did not engage in
misconduct, nor did it violate Fabode's constitutional rights simply by
advising the district court that [Bolanle] faced criminal exposure if the
defense compelled him to testify." *Fabode*, 2022 WL 16825408, at *3.
And, "[i]t was reasonable for the [C]ourt to appoint counsel for Bolanle,
hold a hearing to evaluate his potential criminal exposure, and make a
specific finding that his privilege against self-incrimination would cover
nearly every relevant issue to which he could testify at trial." *Id.*

13

In short, Fabode fails to show that counsel was constitutionally deficient during trial preparation.

## III.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE AT TRIAL FAIL.

Fabode's assertions of ineffective assistance of trial counsel at trial likewise fail. First, as to Shulman's cross examinations of the prosecution witnesses (ECF No. 304, PageID.3371–72), the record shows that they were rigorous, particularly as to Niesheia Tibu (*See* ECF No. 191, PageID.1446–1521) and Dr. Vasan Deshikachar (ECF No. 192, PageID.1590–1636).

Fabode's assigned errors to Shulman's dealing with witnesses are unfounded. Start with Nieshia Tibu, Fabode posits that Shulman should have asked her about Friendz Pharmacy's "cash register's record and the prescription computer." (ECF No. 304, PageID.3372.) However, Fabode has offered nothing to show that Tibu was privy to these items so that she could properly be questioned on them.[4]

---

[4]    The point that Fabode wanted Shulman to demonstrate to the jury — that Friendz Pharmacy charged patients for narcotics consistently — was exhaustively explored through Fabode's expert, Jack Folson. (ECF No. 194, PageID.1976–78, 1993; ECF No. 195, PageID.2041, 2044–51) and Fabode himself (ECF No. 196, PageID.2170–74, 2183).

14

Similarly, Fabode complained that Schulman should have confronted Deshikachar with how Friendz Pharmacy verified doctors' prescriptions. (ECF No. 304, PageID.3372.) But Fabode has failed to explain how Deshikachar, who did not work for Friendz Pharmacy, could be cross-examined in that manner. Indeed, Fabode himself testified at trial that Friendz Pharmacy did not verify Deshikachar's scripts through its regular process. (ECF No. 196, PageID.2142.)

Finally, contrary to Fabode's assertion (ECF No. 304, PageID.3372), Shulman questioned the witnesses who did not know or had not met Fabode and elicited their testimony to that effect. (*See* ECF No. 193, PageID.1778–79 (Lacretia Duval); *id.*, PageID.1790 (Keisha Jones); *id.*, PageID.1790 (Rodriguez Booker).)

The record likewise refutes Fabode's assertion that Shulman failed to present "top evidences [sic.]" — doctor's folders, faked scripts seized by Friendz Pharmacy, and filling scripts procedures. (ECF No. 304, PageID.3367.) At trial, Fabode testified in detail how Friendz Pharmacy verified the prescriptions and the doctors. (ECF No. 196, PageID.2141–46, 2149–2153; *see also* ECF No. 197, PageID.2304–05.) Fabode also extensively explained how illegitimate prescriptions were

15

seized. (ECF No. 196, PageID.2153–55.) Fabode was asked and spoke at length about various defense exhibits, including a 157-page binder containing pictures of doctor verifications, a list of doctors whose prescriptions would not be filled at Friendz Pharmacy, and examples of seized faked scripts. (ECF No. 196, PageID.2196–2208).[5]

Not only has Fabode failed to show that his trial counsel was deficient, but Fabode also does not demonstrate prejudice.[6] "Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that 'absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt.'" *Higgins*, 470 F.3d at 634 (citing *Moore v. Carlton,* 74 F.3d 689, 693 (6th Cir.1996)). Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695. A verdict "only weakly supported by the record is more likely to have been affected by errors

---

[5]     According to Shulman, "the records that related to doctors' verification and fake scripts maintained by Friendz Pharmacy were voluminous," and he "presented the photographed portions that [he] believed to be useful and pertinent at Mr. Fabode's trial." (Ex. 1, ¶ 7.)

[6]     Shulman believed that the presented portion "gave the jury a complete understanding of []Fabode's pharmacy's practice with respect to -verifying the prescriptions that were presented to be filled." (*Id.*)

than one with overwhelming record support." *Id.* at 696. Here, Fabode

cannot show how any purported deficiencies prejudiced him or

overshadowed the abundance of proof that supported the jury's guilty

verdict.[7] "[I]t is not for the [C]ourt to search the record and construct

arguments. Parties must do that for themselves." *Brenay v. Schartow*,

709 F. App'x 331, 337 (6th Cir. 2017).

In sum, Fabode has not explained how he was prejudiced by

alleged counsel's errors and he fails to show any valid claim of

ineffective assistance of counsel at trial.

## IV.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE AT SENTENCING FAIL.

Fabode's claim that Shulman inadequately assisted him during the

pre-sentence interview process fails to satisfy his burden. (ECF No. 304,

PageID.3373–74.) To begin with, "[t]he right to counsel only attaches

during a 'critical stage of the prosecution.'" *United States v. Tisdale,* 952

F.2d 934, 939 (6th Cir.1992) (quoting *Kirby v. Illinois,* 406 U.S. 682, 690

---

[7]    In assessing Fabode's motion for acquittal and/or new trial, the Court noted that the evidence "was more than sufficient" for the jury to convict. (ECF No. 237, PageID.2629–33.)  Likewise, the Sixth Circuit, on Fabode's direct appeal, also observed that the evidence in this case was "overwhelming." *Fabode*, 2022 WL 16825408, at *7.

(1972)). "Although the Sentencing Guidelines have increased the importance of the probation officer's report, in non-capital cases such as this one the presentence interview does not represent a critical stage of the prosecution." *Id.* at 940. Consequently, the Sixth Amendment does not guarantee counsel assistance at pre-sentence interviews. *See Searle v. Rapelje,* No. 2:09-CV-13369, 2011 WL 3918951, at *8 (E.D. Mich. Sept. 7, 2011) (Zatkoff, J.) ([F]ederal courts have determined that a pre-sentence interview is not a critical stage of the proceedings requiring counsel under the Sixth Amendment.") (citing cases). And Fabode's claim of ineffective counsel assistance at this process is legally faulty.

In any case, Fabode fails to explain how Shulman's representation was deficient. Fabode does not identify what information was erroneous or should have been included in his responses to the probation department's questions had Shulman been more diligent. (ECF No. 304, PageID.3373–74.) Even though Fabode is *pro se*, the Court "should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Also lacking is any showing of prejudice.

Next, Fabode's assertion that Shulman failed to review and discuss the pre-sentencing report with Fabode belies the record. (ECF No. 304,

PageID.3373.) At the sentencing hearing, Fabode was next to Shulman when he affirmed with the Court that he reviewed the pre-sentence report with Fabode. (ECF No. 246, PageID.2785.) Fabode spoke at the hearing; he never contradicted his counsel. (*Id.*, PageID.2794.) In any case, Fabode has not explained how he was prejudiced.

Also unbelievable are Fabode's claims that Shulman failed to raise objections to the drug weight, address Fabode's lifestyle and character, and move for a downward variance (ECF No. 304, PageID.3374–78; *see* Ex. 1, ¶¶ 10-11.) The Sentencing Memorandum prepared by Shulman lengthily disputed the drug quantity used to calculate the guideline in the pre-sentence report, and there was extensive argument at sentencing on the "correct drug quantity" that was attributed to Fabode individually. (ECF No. 240, PageID.2718–25). Contrary to Fabode's claim that Shulman "failed to file any kind of motion for downward variance" (ECF No. 304, PageID.3378), the record says different. Shulman intensively highlighted Fabode's history and characteristics in moving for a downward variance – highlighting his education, immigrant status, familial responsibilities, church involvement and service participation.

19

(*Id.*, PageID.2733–39; *see also* Ex. 1, ¶ 11.) Shulman also attached about 20 letters of good characters in support of Fabode. (ECF No. 240-1.)

Ultimately, the Court only held Fabode responsible for the prescriptions that he himself issued. (ECF No. 246, PageID.2787.)[8] Additionally, after defense counsel's argument, the court also put Fabode in a lower criminal history category (I), considering that he "led a pretty good life; safe and not in trouble." (*Id.*, PageID.2788.) And, although the guideline using the reduced offense level and lowered criminal history category was 188 to 235 months, the Court sentenced Fabode to only 96 months. (*Id.*, PageID.2797.) A below guideline sentence shows neither deficient counsel performance nor prejudicial effects.

Therefore, Fabode's claims of ineffective assistance of counsel during sentencing are without merit.

## V.   FABODE'S CLAIMS OF INEFFECTIVE ASSISTANCE ON APPEAL FAIL.

Fabode's issues with Shulman's performance on appeal do not carry the day.  First, Fabode bemoaned the amount of time Shulman took to prepare the appeal brief. (ECF No. 304, PageID.3378-79.) While

---

[8]    The Sixth Circuit upheld the Court's drug-quantity calculation. *Fabode*, 2022 WL 16825408, at *5.

Shulman sought several extensions for the deadline to file of Fabode's brief on appeal, the brief was submitted to and accepted by the Sixth Circuit.  *See* Minute Entry for Jan. 7, 2022 Ruling Letter Granting Appellant's Mot. to Extend Time to File Br., *United States v. Fabode,* No. 21-1491 (6th Cir.). Fabode thus suffers no prejudice. *See West v. United States,* 631 F.3d 563, 568 (1st Cir. 2011) (holding that the defendant suffered no prejudice even though counsel failed to file a timely direct appeal, because the appeal court considered the defendant's arguments as though brought on direct appeal).

Similarly, Fabode's disapproval of Shulman's performance during oral argument is inadequate to upset his convictions and sentence. (ECF No. 304, PageID.3379.) As with the rest of his arguments, Fabode fails to explain how Shulman acted "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. It is not uncommon for the court of appeals to redirect counsel to a particular issue during oral argument. (ECF No. 304, PageID.3379.)

Furthermore, Fabode has not demonstrated how Shulman's purported error would have affected the outcome of the appeal. (*Id.*) Despite Fabode's insinuation that Shulman inadequately argued the

effects of *Ruan v. United States,* 142 S. Ct. 2370 (2022) (ECF No. 304, PageID.3379), this issue was raised in Fabode's appeal brief and expounded through supplemental briefing.  *See* Appellant's Br., Doc. 29, at 14; Appellant's Supplemental Br., Doc. 51. The Sixth Circuit carefully reviewed these submissions in rendering its decision. *Fabode*, 2022 WL 16825408, at *7. Consequently, Fabode cannot show that he was prejudiced. *See Perrou v. Jones*, No. 06-14941, 2009 WL 2392871, at *14 (E.D. Mich. Aug. 3, 2009) (Lawson, J.) (holding that the petitioner failed to show prejudice by waiver of oral argument when the issues had been fully briefed); *Rogers v. Haas*, No. 211-CV-15485, 2013 WL 3188849, at *13 (E.D. Mich. Apr. 8, 2013), *supplemented* 2013 WL 3188852 (E.D. Mich. May 24, 2013) (Komives, MJ.), *and report and recommendation adopted,* No. 11-15485, 2013 WL 3190604 (E.D. Mich. June 20, 2013) (Cohn, J.) (finding no prejudice from counsel's failure to attend oral argument when "counsel had fully briefed the issues on appeal and the court of appeals considered those claims on the merits").

Fabode's claim based on Shulman's alleged failure to inform Fabode of the appellate court's decision is also baseless. Fabode has not shown any prejudice. *See Ucciferri v. United States*, 2006 WL 1281362,

at *3 (M.D. Fla. May 9, 2006). "The appellate court reviewed [Fabode's] appeal and, ultimately, affirmed the conviction and sentence." *Id.*

Likewise, Fabode's assertions that Shulman failed to raise "stronger" arguments are unsubstantiated. (ECF No. 304, PageID.3379–80.) Fabode's contention that Shulman could have meritoriously "questioned witness credibility [and] reconsider[ed] evidences [sic.]" on appeal contradicts well-established precedence. (*Id.*) The Sixth Circuit has said, "In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) (citation omitted). Thus, Shulman was not ineffective when deciding to not raise such frivolous arguments. "It is not necessary for appellate counsel to raise every nonfrivolous claim on direct appeal." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). "In fact, the process of 'winnowing out weaker argument on appeal is the hallmark of effective appellate advocacy." *Id.* (quotation marks omitted)) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

Finally, Fabode posits that Shulman did not "properly argu[e] the drug calculation on appeal." (ECF No. 304, PageID.3380.)  However, Fabode never explains how Shulman was lacking. Nor does Fabode support with any specifics how, absent Shulman's purported errors, "there is a reasonable probability that [Fabode] would have won his appeal." (*Id.*)  Fabode's "bare assertion is insufficient to support his ineffective-assistance claim." *Segura-Corro v. United States*, No. 22-6127, 2023 WL 3273103, at *2 (6th Cir. May 3, 2023); *see United States v. Boston,* No. 14-20383-1, 2021 WL 2646132, at *8 (E.D. Mich. June 28, 2021) (Edmund, J.) ("The argument remains undeveloped and conclusory; there is no basis to sustain a review of [d]efendant's claim.").

## VI.   AN EVIDENTIARY HEARING IS NOT WARRANTED.

Fabode's request for an evidentiary hearing should also be denied. Fabode bears the burden of "show[ing] his right to a hearing." *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007). Ordinarily, courts hold a hearing when a factual dispute underlies a petitioner's claim for relief. *Clark v. Warden*, 934 F.3d 483, 494 (6th Cir. 2019) (citing *Huff*, 734 F.3d at 607). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by

the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333.

As explained above, Fabode has done nothing more than provide bald assertions, conclusory allegations, and statements contradicted by the record. And at no point has Fabode provided a cogent explanation as to how he was prejudiced. Thus, an evidentiary hearing is unnecessary. *See Huff v. United States,* 734 F.3d 600, 608 (6th Cir. 2013) (noting that an evidentiary hearing is unnecessary where counsel's alleged defective performance was inconsequential).

## CONCLUSION

Fabode has failed to meet his burden under *Strickland* and for an evidentiary hearing. His motion should be denied.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

/s/ *Nhan Ho*
Nhan Ho
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48236
313-226-9632
Nhan.ho@usdoj.gov

Dated: August 30, 2023

25