UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

   v.

ABIODUN FABODE, D-3,

       Defendant/Petitioner.
_____/

Case No. 18-20351

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF NO. 296)**

This matter is before the Court on Defendant Abiodun Olufemi Fabode's *pro se* motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Defendant claims ineffective assistance of his retained counsel, Richard Shulman, during various stages of his criminal case. For the reasons set forth below, Defendant's motion is DENIED.

BACKGROUND

On November 13, 2019, following a two-week trial, a jury convicted Defendant of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1), 846, and several counts of Unlawful Distribution of Controlled Substances, 21 U.S.C. §§ 841(a)(1). The Sixth Circuit Court of Appeals affirmed Defendant's convictions and sentence.

The Sixth Circuit summarized the background of this case as follows:

> Abiodun Olufemi Fabode was a licensed pharmacist and the co-owner of Friendz Pharmacy in Detroit, Michigan. In 2016, agents with the United States Drug Enforcement Administration noticed a series of "red flags" at

Friendz Pharmacy. Those red flags included pattern prescribing (where the same doctor repeatedly prescribes the same type of opioid, the same strength opioid, and the same number of tablets to multiple patients); slotting (where doctors and pharmacists strategically space out prescriptions to avoid suspicion); remarkably high opioid prices; and an unusual number of patients paying for drugs with cash. These were all signs of a deep-seated and complicated drug-diversion conspiracy.

Here is how the scheme worked. A series of so-called "patient recruiters" found and paid sham patients to fraudulently seek out opioid prescriptions; some recruiters had as many as 80 sham patients at a time. Those patients then obtained opioid prescriptions from complicit doctors, i.e., doctors who were paid to write prescriptions for patients even though the patients had no identifiable medical need. Patient recruiters then met the patients, paid the patients for their prescriptions, and took those prescriptions to a complicit pharmacy, e.g., Friendz Pharmacy. There, a complicit pharmacist filled the prescriptions, charged a premium—as much as a 400% markup on every prescription—and then handed the drugs directly to the patient recruiters. The patient recruiters then resold the drugs at an even higher price to street-level drug dealers. Everyone profited: the patient recruiters resold the opioids for street value, the patients earned about $100 for every prescription they procured, the doctors earned a substantial fee for every prescription they wrote, and the pharmacists earned a hefty profit on every prescription they sold.

Fabode's pharmacy sold a large quantity of exorbitantly priced opioids, Fabode personally filled many of the illicit prescriptions, and he often bypassed the sham patients and ensured that opioids were handed directly to the patient recruiters.

In 2018, federal prosecutors charged Fabode and five of his coconspirators with a series of federal drug-distribution charges. Every defendant except for Fabode pleaded guilty and cooperated with the government. Fabode proceeded to trial, and several of his codefendants testified against him. Their testimony linked Fabode to every facet of the conspiracy: the planning, the patient recruitment, the drug sales, and the attempted coverup. Fabode was convicted for violating 21 U.S.C. §§ 841(a)(1) & 846, which together prohibit any person without statutory authorization from knowingly or intentionally conspiring "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." The district court sentenced him to 96 months of imprisonment followed by three years of supervised release.

*United States v. Fabode*, No. 21-1491, 2022 WL 16825408, at *1 (6th Cir. Nov. 8, 2022).

STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his conviction or sentence on the ground that they were imposed in violation of the United States Constitution or federal law. To obtain relief, the petitioner must show there was "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (internal quotation marks and citation omitted). The constitutional defect alleged by Defendant is a violation of the Sixth Amendment's guarantee of effective assistance of counsel. U.S. Const. amend VI.

ANALYSIS

To present an ineffective assistance of counsel claim under 28 U.S.C. § 2255, the defendant must show that (1) his attorney's performance was objectively unreasonable and (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, deficient performance occurs where "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* In other words, the defendant must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. Due to the inherent difficulty involved in this task, the reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

For the second prong, the defendant "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citation omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

The defendant bears the burden of proving his claims in a § 2255 motion by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The defendant also bears the burden of articulating sufficient facts to state a viable claim for relief and the petition may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

## ARGUMENT

I.   Ineffective Assistance During Plea Negotiation

The Sixth Amendment right to counsel extends to the plea-bargaining process, ensuring that defendants are "entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Defendant argues his counsel was ineffective because he misadvised Defendant that the Government did not have enough evidence to convict him and that his business partner's testimony could help him be acquitted at trial. Although Defendant initially asserts that his counsel failed to inform him of the Government's plea offer, in his reply brief he acknowledges that is not the case. ECF No. 316, PageID.3471.

The Court first considers whether counsel's performance was objectively unreasonable such that it was constitutionally deficient. Defendant's assertion that he

was ignorant of the facts and law of his case, his plea options, and his potential sentencing exposure, is "contradicted by the record [and] inherently incredible." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). The Government held a reverse proffer with Defendant on May 8, 2019. At that time, they explained the charges and informed Defendant of the evidence they planned to use against him. The Government also presented Defendant with various sentencing guidelines depending on whether he took the plea offer, pled guilty to the indictment, or was convicted at trial. Counsel attests that he discussed the Government's plea offers with Defendant numerous times and Defendant was not amenable to pleading guilty. (Shulman Decl. at ¶ 3, ECF No. 314-2, PageID.3459.) According to counsel, Defendant maintained his innocence, indicating he did not know his co-defendants were drug dealers and/or unethical pharmacists and doctors. *Id*.

The details of the Plea Agreement were also shared with Defendant. On October 22, 2019, at the conclusion of a hearing on a motion in limine and in Defendant's presence, the Government placed the terms of the Rule 11 Plea Agreement on the record. (ECF No. 285, PageID.3144.) The Government offered Defendant the chance to plead to one count of Conspiracy with Intent to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. The offer limited the drug quantity, which equated to a level 32 base offense level. The Government also offered the benefit of the safety valve provision under Section 2D1.1(b)(17), which offered a two-level reduction. Considering all enhancements and reductions, the total offense level under the Rule 11 would have been 27 with a criminal history category of I and a guideline range of 70 to 87 months. *Id*. at PageID.3145. When the Court asked if Defendant accepted the Plea Agreement, counsel answered

that Defendant definitively rejected the agreement offered by the Government. The Government then explained the anticipated sentencing calculations if Defendant rejected the plea and was found guilty at trial. The total offense level would be 32 and the guideline range would be 235 to 293 months. The Court again asked counsel if Defendant was interested in pleading and counsel said he was not. *Id*. at PageID.3146.

The record supports the conclusion that Defendant was made aware of the evidence the Government intended to use against him, the plea offer, and the sentences possible under different scenarios. Although Defendant contends that his counsel failed to adequately advise him, he was present at the reverse proffer and in Court where the terms of the Rule 11 were explained. Defendant never voiced any uncertainty regarding the plea deal or any confusion or dissatisfaction with counsel's advice. Defendant has not met his burden of demonstrating deficient performance by counsel.

Next, the Court considers whether counsel's performance prejudiced Defendant. The Supreme Court held that when counsel's ineffective advice leads to the rejection of a plea offer, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice there is a reasonable probability he and the court would have accepted the terms of the plea offer and that the resulting sentence would have been less severe than the sentence imposed. *Lafler v. Cooper*, 566 U.S. 156, 174 (2012). Here, Defendant alleges he relied on counsel's ineffective advice in rejecting the Rule 11 Plea Agreement and choosing to go to trial. If not for the ineffective advice, Defendant contends he would have pleaded guilty without a plea agreement to preserve his appeal rights, and that he would have received a less harsh sentence as a result. ECF No. 304, PageID.3365. However, the Government correctly points out there can be

no prejudice because Defendant's 96-month sentence is below the applicable guidelines (151 to 181 months) if he had pleaded guilty to the indictment. To that, Defendant counters that his counsel was ineffective by not negotiating a more favorable plea deal with a shorter sentence.

"Courts should not upset a plea [or verdict] solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Smith v. Cook*, 956 F.3d 377, 394 (6th Cir. 2020) (citing *Lee v. United States*, 582 U.S. 357, 369 (2017)). As for Defendant's contention that his counsel was deficient because he failed to negotiate a more favorable plea agreement, there is no constitutional right to any plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Defendant's "claim is based purely on the speculation that a better plea offer could be had, and 'ineffective assistance claims do not turn on such speculative considerations.'" *United States v. Khan*, No. 11-CR-20540, 2016 WL 6650334, at *4 (E.D. Mich. Nov. 10, 2016) (Rosen, J.) (citing *Short v. United States*, 471 F.3d 686, 697 (6th Cir. 2006)); *see Mathis v. United States*, No. 13-20262, 2015 WL 5439246, at *5 (E.D. Mich. Sept. 15, 2015) (Edmunds, J.) (rejecting petitioner's claim of prejudice from counsel's performance when petitioner "simply want[ed] a new deal and there [was] no basis to conclude that the Government would have agree to the scenario Petitioner promote[d] . . . .").

Defendant has not demonstrated that counsel was constitutionally deficient during plea negotiations or that he suffered prejudice as a result.

II.     Ineffective Assistance During Trial Preparation

Defendant next contends counsel was ineffective by failing to inform him of the defense strategy. However, Defendant does not identify any material information that was not communicated by his counsel, nor does he demonstrate how the lack of

communication prejudiced his defense at trial. Conversely, Mr. Shulman attests that Defendant actively engaged in the preparation of his defense at trial. (Shulman Decl. ¶ 6, ECF No. 314-2, PageID.3460.)

Even if Defendant was able to demonstrate his counsel failed to communicate the defense strategy, there is no legal basis for finding that counsel's actions constitute ineffective assistance of counsel. While counsel has "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of prosecution", *Strickland*, 466 U.S. at 688; *Miller v. Straub*, 299 F.3d 570, 579-81 (6th Cir. 2002), Defendant's allegation does not fit into one of these categories. *See United States of America v. Price*, No. 16-20437, 2020 WL 6286302, at *3 (E.D. Mich. Oct. 27, 2020) ("Defendant lacks a substantiated legal argument that her attorney violated a duty to disclose legal strategy to the point of being defective.").

Defendant also suggests that counsel failed to conduct his own investigation to aid in developing a defense strategy. The Sixth Circuit has held that "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material. *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (citing *Austin v. Bell,* 126 F.3d 843, 848 (6th Cir. 1997); *see also Martin v. Mitchell,* 280 F.3d 594, 608 (6th Cir. 2002). Here, Defendant has not identified what evidence counsel should have uncovered nor explained how counsel's failure to discovery evidence was ineffective and prejudicial.

Finally, Defendant argues that counsel was ineffective for not taking pretrial depositions of Defendant's former business partner, Olugbade Bolanle. Under Federal

Rule of Criminal Procedure 15(a)(1), "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances . . . ." Defendant has not provided any justification to warrant a pretrial deposition of Bolanle. He also fails to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). There is nothing to suggest that, had Bolanle been deposed, the Government and the Court would not have taken the same measures they took at trial to safeguard his constitutional rights.[1] Nor is there reason to believe Bolanle would have waived his privilege against self-incrimination.

Defendant has not demonstrated that counsel was constitutionally deficient during trial preparation.

III.     Ineffective Assistance at Trial

Regarding counsel's alleged ineffective assistance at trial, Defendant focuses primarily on the cross-examination of the Government's witnesses. Defendant argues that to debunk witness Nieshia Tibu's claim about the price she was charged, counsel should have pointed out the cash register's record and the prescription computer to demonstrate that Friendz Pharmacy charged all patients the same price for narcotics. However, Defendant has not identified any evidence that Tibu was privy to these items

---

[1] The Sixth Circuit observed, "the prosecution did not engage in misconduct, nor did it violate Fabode's constitutional rights simply by advising the district court that [Bolanle] faced criminal exposure if the defense compelled him to testify." *Fabode*, 2022 WL 16825408, at *3. Further, "[i]t was reasonable for the [C]ourt to appoint counsel for Bolanle, hold a hearing to evaluate his potential criminal exposure, and make a specific finding that his privilege against self-incrimination would cover nearly every relevant issue to which he could testify at trial." *Id*.

so she could be properly questioned about them. Furthermore, the topic was thoroughly explored at trial through Defendant's expert and Defendant himself. (ECF No. 194, PageID.1976–78, 1993; ECF No. 195, PageID.2041, 2044–51; ECF No. 196, PageID.2170–74, 2183.)

In the same vein, Defendant alleges that counsel should have cross-examined Dr. Deshikachar about how Friendz Pharmacy verified doctors' prescriptions. As Dr. Deshikachar did not work for Friendz Pharmacy, it is not clear how he would know about the verification process. Additionally, Defendant testified at trial that Friendz Pharmacy did not verify Dr. Deshikachar's prescriptions through the regular process because he wrote so many prescriptions and they knew him. (ECF No. 196, PageID.2142.)

A few witnesses who testified against Defendant had never met him before. Contrary to Defendant's argument, counsel did elicit their testimony to that effect on cross-examination. (*See* ECF No. 193, PageID.1778–79 (Lacretia Duval); id., PageID.1790 (Keisha Jones); id., PageID.1790 (Rodriguez Booker).)

The record also refutes Defendant's assertion that counsel failed to present evidence of doctor's folders, faked scripts seized by Friendz Pharmacy, and script filling procedures. Defendant testified about the process used to verify prescriptions and doctors. (ECF No. 196, PageID.2141–46, 2149–2153; see also ECF No. 197, PageID.2304–05.) He also explained how illegitimate prescriptions were seized. (ECF No. 196, PageID.2153–55.) Defendant testified about various defense exhibits, including a 157-page binder containing pictures of doctor verifications, a list of doctors whose prescriptions would not be filled at Friendz Pharmacy, and examples of seized

faked scripts. (ECF No. 196, PageID.2196–2208.) Defendant fails to show that his counsel's performance at trial was deficient.

Defendant also fails to demonstrate prejudice. To satisfy the prejudice requirement in the context of a trial, a defendant must "demonstrate a reasonable probability that the result of his trial would have been different but for" his trial counsel's mistakes. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Whether an error prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. In assessing Defendant's motion for acquittal and/or new trial, this Court noted that the evidence "was more than sufficient" for the jury to convict. (ECF No. 237, PageID.2629–33.) Likewise, the Sixth Circuit, on direct appeal, also observed that the evidence in this case was "overwhelming." *Fabode*, 2022 WL 16825408, at *7. Defendant has not shown how any of the purported deficiencies discussed above prejudiced him or overshadowed the evidence that supported the jury's guilty verdict.

Defendant has not demonstrated that counsel was constitutionally ineffective during trial.

IV.     Ineffective Assistance at Sentencing

Defendant contends that prior to sentencing, counsel failed to assist him during the presentence interview process. For starters, in non-capital cases, the presentence interview does not represent a critical stage of the prosecution. *United States v. Tisdale*, 952 F.2d 934, 940 (6th Cir. 1992). As such, the Sixth Amendment does not guarantee assistance of counsel at presentence interviews. *See Searle v. Rapelje*, No. 2:09-CV-13369, 2011 WL 3918951, at *8 (E.D. Mich. Sept. 7, 2011). Even if Defendant had a right to counsel at the presentence interview, he does not identify what information

-11-

should or should not have been included in his response to the probation department's questionnaire, or how he was prejudiced. The Court "should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Defendant next asserts that counsel failed to review or discuss the PSR with him. Defendant was present at the sentencing hearing when counsel affirmed to the Court that he reviewed the PSR with his client. Defendant spoke on his own behalf at the hearing and did not contradict his counsel. Defendant also fails to explain how he was prejudiced by any failure of his counsel.

The final objections regarding sentencing are that counsel failed to object to the drug weight, address Defendant's lifestyle and character, and move for a downward variance. In fact, Defendant's Sentencing Memorandum did dispute the drug quantity used to calculate the guideline in the PSR. Counsel also argued at sentencing about what drug quantity could be attributed to Defendant individually. In addition, counsel moved for downward variance based on Defendant's history and characteristics. The record, which includes about 20 letters of good character in support of Defendant, belies Defendant's argument.

Not only did counsel vigorously object to parts of the PSR, but the Court was persuaded by counsel's arguments. The Court only held Defendant responsible for the prescriptions he personally issued, calculated a lower criminal history category based on Defendant's character, and sentenced Defendant to 96 months – well below the guideline range of 188 to 235 months.

Defendant's claims of ineffective assistance of counsel during sentencing are without merit.

V.      Ineffective Assistance on Appeal

The same counsel also represented Defendant in his appeal. Defendant makes various arguments that counsel's performance on appeal was ineffective. First, counsel sought several extensions of the deadline to file the appellate brief. The brief was eventually filed and accepted by the Sixth Circuit. Therefore, Defendant did not suffer any prejudice due to the delay. Second, Defendant argues that counsel's performance during oral argument, where the court of appeals redirected him to a particular issue, speaks to his lack of preparedness. Redirecting an argument is not uncommon in the court of appeals and does not demonstrate that counsel acted "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The legal argument at issue – the effects of *Ruan v. United States*, 142 S. Ct. 2370 (2022) – was raised in Defendant's appeal brief and further discussed in supplemental briefing. Defendant therefore cannot show prejudice. *See Perrou v. Jones*, No. 06-14941, 2009 WL 2392871, at *14 (E.D. Mich. Aug. 3, 2009) (Lawson, J.) (holding that the petitioner failed to show prejudice by waiver of oral argument when the issues had been fully briefed).

Defendant also asserts that counsel failed to raise stronger arguments on appeal. Specifically, he believes that counsel should have questioned the credibility of certain witnesses and evidence. The Sixth Circuit has said, "[i]n addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) (citation omitted). Counsel was not ineffective in making the decision not to raise this argument. "In fact, the process of 'winnowing out weaker argument on appeal is the hallmark of effective

-13-

appellate advocacy." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation marks omitted) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

Defendant fails to demonstrate deficient representation on appeal.

VI.  Evidentiary Hearing Not Warranted

Defendant requests an evidentiary hearing. Hearings are typically held only when a factual dispute underlies the defendant's claim for relief. *Clark v. Warden*, 934 F.3d 483, 494 (6th Cir. 2019) (citing *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). In this case, a hearing is not required because Defendant's allegations are mostly contradicted by the record or conclusory. The Court finds that an evidentiary hearing would not be helpful in this case.

## CONCLUSION

Given that Defendant has not shown that he received deficient representation or suffered prejudice, his ineffective assistance of counsel claim fails, and his § 2255 motion is DENIED.

The Court declines to issue a certificate of appealability because Defendant has not "made a substantial showing of the denial of a constitutional right," for the reasons stated above. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 16, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 16, 2025, by electronic and/or ordinary mail.

s/Marlena Williams
Case Manager